No. 33,314

BERNARD ZIEGELMEIER, *Appellee*, v. THE ALLIS-CHALMERS MANUFACTURING COMPANY, *Appellant*, LOUIS J. SHALZ, *Defendant*.

(66 P. 2d 387)

Opinion filed April 10, 1937.

*V. L. C. Smith, Guido E. Smith,* both of Colby, *Oscar D. McCollum* and *C. H. Ewald,* both of Kansas City, Mo., for the appellant.

*Morgan H. Cole, E. F. Beckner* and *Leon N. Roulier,* all of Colby, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to rescind a contract of purchase of "one five (5) ton Holt tractor" and to recover the amount of money and property paid in advance for it, the allegation being that the tractor received was not a "Holt tractor."

The answer of the defendant company was a general denial and estoppel. The case was tried by a jury. At the close of plaintiff's evidence the defendant company demurred thereto and the trial court overruled the demurrer. The defendant company stood on the demurrer and did not offer any evidence, and the court rendered judgment for the plaintiff for the return of the money paid and interest thereon and the return of the property traded in and also for expenses paid by plaintiff for repairs on the tractor.

The most important error assigned by appellant is the overruling of its demurrer which concerned the sufficiency of the evidence of the plaintiff that the tractor delivered was not a "five (5) ton Holt tractor," the burden of proof being on the plaintiff. The evidence shows that the plaintiff purchased such a tractor from a local agent of the defendant company who was also made a party to this action, but he filed no answer and made no defense, and judgment was rendered against him as agent of the defendant company.

The evidence shows that the plaintiff had been using tractors in his farming for a few years, and had observed the efficiency of the different makes of tractors used in the same neighborhood, and had attended a recent exhibition of tractors and had talked with representatives and salesmen about different tractors, and had talked with the defendant local agent about the defendant company's having acquired from the government a number of Holt tractors made during the recent war, between 1914 and 1918. He also learned from representatives of the defendant company that these tractors had been used during the war every sixty or ninety days by being driven around a block or more to see if they were in proper condition for use. He made two special trips to see them and hear them when working, but did not have an opportunity at either place to examine the tractors.

He decided to purchase one of this kind, and on the 7th of May, 1934, signed an order for the purchase of "one five (5) ton Holt tractor" from the defendant, Louis J. Shalz (dealer), at Colby, Kan., for $800, $100 of which was in trade for an old tractor, and $700 in cash. He delivered the old tractor to defendant dealer or agent for the defendant company, and gave him his check for $750, $50 of which was for freight on the tractor purchased. The written order described the tractor purchased as "one five (5) ton Holt tractor." The written order was headed "triplicate order for secondhand machinery," and contained the following paragraph near the close thereof:

"The above-described machinery is purchased by the undersigned as secondhand, where it is and as it is with no warranty whatsoever except as to title."

The tractor arrived at Colby the latter part of May, 1934, and plaintiff took it out to his farm at once and commenced to use it. He testified "it started heating right away." He sent for mechanics. They worked on it, but it still heated. The defendant agent said he had complaint from the plaintiff about the tractor: "he complained of it the second or third day after he had taken it home." The plaintiff testified that he had several expert mechanics work on it, but the motor still heated and the heat affected the power of the motor. He took it back August 7, 1934, to Colby, and left it in the lot where the defendant dealer had other tractors and left word at the dealer's place of business that he had done so.

Nothing further was done by the plaintiff in connection with the failure of the tractor to work until about thirteen months after he had taken it back. He then had a suggestion from a dealer in tractors that it might not be a Holt tractor, and that led to an investigation of the tractor in detail, and it was found by the plaintiff and two experts in an examination of it that it had a Maxwell motor and that the plates on the side showed it was licensed and made for the United States government under Holt patents, and it specified the different patents as follows: "Licensed under patents of the Holt Manufacturing Company, U. S. A., and Caterpillar of London, England, for military use of the United States government, patented in United States." The word "Maxwell" was stamped on the motor and there were some numbers right after that which had been painted over. The letters "U. S. A." were on the radiator.

One of the expert witnesses testified that he had examined a number of tractors that had previously been owned by the govern-

ment and had worked around tractors since 1912, and that this one was not a Holt tractor. "If they had built this tractor it would have had the word 'Holt' on it. I know that from what the factory tells me." He said he was with the credit department of the Caterpillar Tractor Company, which company succeeded the Holt Manufacturing Company, and now has and owns the patents and dies of the Holt company.

Another expert testified that he was running a repair shop and had been engaged in handling Caterpillar tractors for thirteen years and had experience with Holt tractors, and further said:

"Based on my experience in the sale of repairs and the repairing of Holt and other makes of tractors over a period of eight or ten years, the tractor in question is not a Holt tractor, in my opinion."

He further said: "I pretty near know for a fact the Ziegelmeier tractor was not built by Holt." Then he told that during the war the company could not manufacture these tractors fast enough for the government, and they turned their patent rights and the right to build these tractors over to different companies. The Holt company did not cease to build tractors during the war, but the Reo and, he thought, the Maxwell and the White built some.

Another witness testified that he had made an examination of this particular tractor and that he had handled Holt tractors and Holt machinery of different kinds for about six years, and that all the Holt tractors he ever saw had the word "Holt" on them in different places, especially on the radiator. He testified that the Holt and Caterpillar people used heat-treated material in all the wearing parts of their tractors. The crawler-type tractors look a great deal alike, he said, but he noticed other differences in this one from the Holt build—for instance, in the sprockets.

The defendant Shalz testified that the plaintiff, Mr. Watkins, Mr. Gunnells and he had examined this tractor where it stood on his lot in August, 1935, and further said:

"At the time this order was written and at the time the tractor came I was of the opinion it was a Holt tractor and first learned it was not a Holt tractor the day we gentlemen examined it in August, 1935."

Appellant insists that this evidence does not establish that the tractor sold was not a Holt tractor, urging that it mainly shows that a Maxwell-built motor was installed in a Holt tractor, built in the Holt Manufacturing Company's plant, and that a motor of a different make would not change the name, make or efficiency of the

tractor. We think the evidence goes further than this and does not depend upon the name of the motor only. Several expert witnesses, as above quoted, said it was not a Holt tractor, and some of them referred to other differences such as heat-treated material and differences in the sprockets. We think there was sufficient evidence to support the claim of the plaintiff that it was not a Holt tractor and to justify the court in overruling the demurrer to the evidence of the plaintiff.

The appellant contends that the acceptance of the tractor by the plaintiff and the use of it for nearly three months afforded him every opportunity to inspect the tractor and discover what was later discovered, and that it is unreasonable to think that when he was having difficulty in getting it to work without heating and having mechanics working on it that no examination was made by him to see if the tractor was what he ordered. This argument can be answered by the general rule of confidence rather than suspicion. Even the defendant dealer had that confidence in its being what it was intended to be during the thirteen months it stood in his lot after being brought back by the plaintiff. Along the same line the appellant insists upon the very great delay on the part of the plaintiff, first in retaining possession of the tractor for nearly three months before returning it, and then in waiting thirteen months longer before demanding rescission and commencing this action, as constituting laches and working an estoppel. The evidence shows that the defendant company was notified of plaintiff's intention to rescind immediately after discovering that the machine was not a Holt tractor, and this action was filed within a few days after such discovery.

*Blakeslee v. Morgan,* 118 Kan. 486, 488, 235 Pac. 1042, was where there was delay in the return of a truck which had been purchased, but there was some evidence showing "a sort of return of the truck and a tacit or implied acceptance of it."

Appellant also cites several sections in 55 C. J. where failure to exercise the right to reject the goods and return them to the seller within a reasonable time implies an acceptance, and especially if coupled with the retaining of the possession and the continued use thereof; but all such general rules are followed in the text with exceptions where the discoveries are latent matters and where there is a prompt complaint of troubles and an attempted return.

In the case of *Morrow v. Bonebrake,* 84 Kan. 724, 115 Pac. 585,

the purchaser of a diamond, who delayed some time in comparing it and learning if the matter had been misrepresented to her by the salesman, was not held to be precluded from rescission thereby. In the case of *Wicks v. Smith,* 21 Kan. 412, it was held:

"The mere delay of the party who finds himself defrauded, in rescinding a fraudulent contract, and returning the property he has received under the contract, does not take away the right, if in the interval while he is deliberating no innocent third party has acquired any interest in the property, and the wrongdoer, in consequence of the delay, is in no way affected injuriously in his position." (Syl. ¶ 1.)

The only fraud involved in the case at bar is in the allegation that the defendant delivered to plaintiff a different tractor from that named in the written contract. (See *Fairbanks v. Walker,* 76 Kan. 903, 92 Pac. 1129.)

What constitutes a reasonable time for the return of the goods and rescission is a question of law where the facts are undisputed. (*Bauman v. McManus,* 79 Kan. 766, 101 Pac. 478.)

The suggestion as to there being an implied warranty that the thing sold would do the work which it was expected and intended to do is excluded in the order and does not apply to secondhand goods. It is said in 55 C. J. 751:

"Generally there is no implied warranty of fitness in the sale of second-hand articles." (See, also, 24 R. C. L. 170.)

In 55 C. J. 266 it is said:

"Ordinarily the buyer may rescind where the seller delivers, or offers to deliver, something different from that agreed to be delivered. . . ."

This is what the evidence in this case seemed to show and that the delay in returning the tractor and later rescinding the contract after a greatly delayed discovery of a latent matter did not estop the plaintiff from maintaining an action of rescission.

However, there is a question as to interest and repairs that requires further consideration. The appellant, promptly before the trial, moved the court to require the plaintiff to elect between his action for rescission and allegation for damages of $71 for repairs. The trial court overruled this motion and admitted evidence on both causes of action, but since the defendant rested without introducing any evidence after its demurrer to the evidence of the plaintiff had been overruled, there was no further need of the jury and it was discharged and the two lines of evidence would not work any prejudice to the appellant. There being no warranty, express or implied,

under the terms of the written contract or order, there can be no recovery of damages for repairs. The latter can only be based upon breach of warranty, and there being no warranty here, the plaintiff made repairs on his own account and is not entitled to recover them from defendants. As to interest, such is only recoverable from the time of rescission. (55 C. J. 1104.)

The judgment for plaintiff and against defendants should be modified to the extent of the repairs and the interest on the purchase price prior to the commencement of this action. Otherwise the judgment is affirmed.