**George OLSON, Plaintiff,**

v.

**U.S. INDUSTRIES, INC., Defendant and Third Party Plaintiff,**

v.

**ULYSSES IRRIGATION PIPE CO., INC., Third Party Defendant.**

No. 85–1229–K.

United States District Court, D. Kansas.

Dec. 29, 1986.

William L. Fry, Wichita, Kan., for plaintiff.

Clifford L. Malone, Wichita, Kan., for defendant and third party plaintiff.

Forrest James Robinson, Wichita, Kan., for third party defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff George Olson, a former employee of defendant U.S. Industries, Inc. (USI), seeks damages for strict liability and negligence in USI's design and manufacture of a machine which subsequently injured plaintiff during its operation. The court previously determined under the peculiar facts of this case that no cause of action for products liability, under Restatement (Second) of Torts § 402A, could lie against defendant USI. Defendant USI now moves for summary judgment on the balance of plaintiff's complaint. Following

the parties' oral argument and a thorough review of the parties' briefs, the court grants defendant's motion.

The critical facts of this case are not in dispute. Plaintiff was an employee of Ulysses Irrigation Pipe Co. (Ulysses I), a division of defendant USI, from the 1960s until August 1, 1983. In the course of this employment, plaintiff's supervisors instructed him to observe and copy a competitor's molding machine used in manufacturing end-caps for use and sale with irrigation pipe. Plaintiff did so, drafting the plans for the machine and ultimately constructing it for defendant's use in manufacturing operations. Plaintiff apparently modified the machine only to the extent necessary to accommodate USI's hydraulic system as the power source, rather than electricity. Plaintiff constructed this machine in the fall of 1979, and thereafter successfully operated the machine for USI until July 31, 1983. On that date, third party defendant Ulysses Irrigation Pipe Co., Inc. (Ulysses II), a company unrelated to defendant USI, purchased all assets of the Ulysses I division, including the end-cap molding machine.

Under the agreement of sale executed July 31, 1983, USI specifically disclaimed all warranties, express and implied, with respect to fitness, merchantability or otherwise, pertaining to the assets of Ulysses. The buyer, Ulysses II, acquired the assets of the former division " 'as is' and 'where is' on the closing date." Third party defendant Ulysses II also agreed to assume, defend, pay, perform or discharge and indemnify defendant USI for all liabilities, absolute or conditional, arising out of the business of the Ulysses I division, including warranty and product liability claims asserted against USI. (Record at 12, Ex. A.) Following the sale, Ulysses II (hereafter "Ulysses") continued the same business of the division with many of the same employees, including plaintiff George Olson. Over seven months later, on March 15, 1984, in the course of plaintiff's employment with Ulysses, he was severely injured in the operation of the end-cap molding machine. Plaintiff was attempting to adjust the forming ring, or plunger, of the machine when his body pushed the control lever, activating the hydraulic system and forcing the plunger down, severing plaintiff's hands.

At the time Ulysses took over the business, the company and its employees, including plaintiff Olson, were covered by the Kansas Workers' Compensation Act, K.S.A. 44–501 *et seq.* As a result of plaintiff's accident during his employment with Ulysses, plaintiff received workers' compensation benefits for his injuries.

Plaintiff styles this action against his former employer, USI, as a product liability action, with additional allegations of negligence in overseeing the manufacture of the end-cap molding machine. Plaintiff alleges defendant USI knew, or should have known, of the machine's dangerous propensities and the absence of safeguards and warnings. Defendant USI answered the complaint and filed a third party complaint for indemnity against Ulysses. On July 15, 1985, the court upheld USI's third party complaint against Ulysses' motion to dismiss. (Record at 28.) Defendant USI and third party defendant Ulysses then moved for summary judgment on the product liability aspects of plaintiff's complaint. The court granted defendants summary judgment on the counts of plaintiff's complaint based on strict liability in tort under § 402A. (Record at 45.)

Defendant USI now seeks summary judgment on the balance of plaintiff's complaint, contending: (i) the exclusivity provisions of the Kansas Workers' Compensation Act bar any common law action by a former employee for an employer's breach of a legal duty owed to the employee during the period of employment; (ii) at the time of the sale of the division to third party defendant Ulysses, all duties to prevent harm shifted from USI to Ulysses as plaintiff's present employer, and Ulysses' failure to prevent such harm is a superseding cause of plaintiff's injuries relieving USI of all liability; and (iii) Ulysses' immunity under the Workers' Compensation Act inures to the benefit of USI, insofar as Ulysses stands in the shoes of USI in the

conduct of this business and plaintiff's employment. Under the unique facts of this case the court agrees with USI's second contention, and therefore declines to address the first and third.

Summary judgment is appropriate only where there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A motion under Rule 56 will be denied unless the moving party demonstrates beyond a reasonable doubt he is entitled to a ruling in his favor. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir.1978). But once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. In the language of the rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. —, —, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. —, —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Initially we note in greater detail the conditions and terms of the sale of USI's assets, including the machine in question, to Ulysses. In the agreement of sale, as it pertained to this machine, USI represented and warranted only that it possessed marketable title in and to the assets to be transferred. In all other pertinent aspects, the contract states:

[N]either USI nor the buyer has made or will make any representations or warranties in connection with this agreement, and, in particular, but without limiting the generality of the foregoing, (i) USI has not made, and this agreement shall not be construed to contain, any representation or warranty concerning the condition of any of the assets of Ulysses ... (ii) USI specifically disclaims all warranties, express or implied, with respect to fitness, merchantability or otherwise, pertaining to the assets of Ulysses and (iii) the buyer is taking the assets of Ulysses "as is" and "where is" on the closing date.

(Record at 12, Ex. A.) Although the general rule is that the implied warranties of merchantability and fitness apply to sales of both new and used goods, one of the situations in which those warranties will not arise is that evident in this case, where the warranties in a sale of used goods are disclaimed as set forth in K.S.A. 84-2-316(3)(a) and the goods are offered for sale "as is" or "with all faults," thus calling the buyer's attention to the exclusion of warranties. *International Petroleum Services, Inc. v. S & NW Well Service, Inc.*, 230 Kan. 452, 456-57, 639 P.2d 29 (1982); *see also Ziegelmeier v. Allis-Chalmers Mfg. Co.*, 145 Kan. 652, 66 P.2d 387 (1937). USI is not a "merchant" of machinery of this type, as that term is defined in K.S.A. 84-2-104(1), and thus there is no implied warranty of merchantability arising under K.S.A. 84-2-314. Further, USI's exclusion of the warranties was both in writing and conspicuous as required by K.S.A. 84-2-316(2), and there is no contention that exclusion is unreasonable.

Thus, the analyses of duty and causation begin with the recognition this case involves an isolated sale of used machinery with no express or implied warranties of merchantability or fitness for either ordinary or particular purposes. Plaintiff contends the questions of duty and causation must focus on the status of the various parties at the time of injury. The court agrees. Although it is clear plaintiff Olson himself planned and constructed the endcap molding machine, defendant USI concedes that in its capacity as the employer and principal of Olson, it "is chargeable with whatever Olson physically built." (Supplemental Memorandum of Defendant in Support of Motion for Summary Judgment, p. 2.) However, USI contends that status does not rise to the level of a "manufacturer" of this machine because it was not built in contemplation of sale as a commercial product, but simply for in-house

use in the course of defendant's pipe manufacturing business. Under these circumstances defendant contends its duties are those of a supplier of a chattel, as those duties are defined in Restatement (Second) of Torts § 388 (1965). Although the court also views with some skepticism the notion USI was a "manufacturer" of this machine in the full sense of that term, the question need not detain resolution of the remaining issues. Indeed, § 394 of the Second Restatement states:

> The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge.

Comment *a* states the manufacturer of a chattel is under those general liabilities which are common to all suppliers of chattels for the use of others, which liabilities are those stated in §§ 388–390. The court acknowledges, and will address, the special liabilities of §§ 395—398 which attach to a manufacturer who places goods in the market by sale. Thus, in this case defendant USI is the supplier-manufacturer of the machinery, Ulysses is the purchaser of the machine and the employer of plaintiff, and plaintiff is the employee of the purchaser.

In a negligence action the plaintiff has the burden of proving

(a) facts which give rise to a legal duty on the part of the defendant to conform to the standard of conduct established by law for the protection of the plaintiff,

(b) failure of the defendant to conform to the standard of conduct,

(c) that such failure is a legal cause of the harm suffered by the plaintiff, and

(d) that the plaintiff has in fact suffered harm of a kind legally compensable by damages.

Restatement (Second) of Torts § 328A (1965). The functions of a court in such a case are to determine, among other things, whether the facts give rise to any legal duty on the part of the defendant, the standard of conduct required of the defendant by his legal duty, and the application of any rules of law governing causation. *Id.,* § 328B.

Plaintiff contends USI labored under a duty to inspect and test the machine, after he built it, to determine the dangers involved in its operation and provide appropriate safeguards. Any breach of that duty by USI when the machine was actually built, during the course of plaintiff's employment, is not itself actionable because plaintiff's injury occurred after he left employment with, and the machine in the possession and control of, USI. Defendant USI's duties and consequent liability must be defined according to the law governing manufacturers or suppliers of chattels for others' use.

Under Kansas law negligence does not exist in the abstract, but contemplates a legal duty owing from one party to another and the violation of that duty by the former. *Sell v. Bertsch and Co., Inc.,* 577 F.Supp. 1393 (D.Kan.1984). There is no legal duty not to sell a chattel which involves a risk of harm. Restatement (Second) of Torts § 401 comment *k.* But a manufacturer of a chattel may be liable for negligent design and manufacture:

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

*Id.,* § 395. This is merely the ordinary duty of reasonable care imposed upon the manufacturer as to any product which he can reasonably expect to be dangerous if he is negligent in its manufacture or sale. *Id.,* § 395 comment *a.* The precautions of inspections and tests may be necessary to comply with the standard of reasonable care. *Id.,* § 395 comment *e.*

The court cannot find USI fits within the meaning of the term "manufacturer" as used in § 395. Our research reveals only

one Kansas case which discusses the term. In *Nixa v. Lehmann,* 70 Kan. 664, 79 P. 141 (1905), the court held defendant was a "manufacturer" for warranty purposes, rejecting the contention that the business of canning apples for sale is not "manufacturing" merely because defendant did not "make" the goods. The court's analysis reveals special duties and liabilities attached to defendant because of the ongoing nature of this business and the manner in which he represented his products and expertise to the buyer:

> "[W]hen the seller is the maker or manufacturer of the thing sold, the fair presumption is that he understood the process of its manufacture, and was cognizant of any latent defect caused by such process and against which reasonable diligence might have guarded. This presumption is justified, in part, by the fact that *the manufacturer or maker by his occupation holds himself out as competent to make articles reasonably adapted to the purposes for which such or similar articles are designed.*"

*Nixa v. Lehmann,* 70 Kan. at 666–67, 79 P. 141, quoting *Kellogg Bridge Company v. Hamilton,* 110 U.S. 108, 116, 3 S.Ct. 537, 542, 28 L.Ed. 86 (1884) (emphasis added). In other jurisdictions tort liability preserves this concept of a "manufacturer", as one who regularly engages in the production of the goods in question in the ordinary course of business and in contemplation of sale to others:

> "The Manufacturers Liability Doctrine," heretofore has been limited in its application to "finished products" manufactured or assembled and sold to the immediate user or put on the market through dealers to be sold to be used by the purchaser for the purposes for which it was manufactured or assembled....

*Crane Co. v. Davies,* 242 Ala. 570, 8 So.2d 196, 199 (1942). In a more recent case, defendant in a wrongful death action sought indemnity from an independent contractor who constructed the chattel, claiming the contractor was the "manufacturer" or "designer" of a light pole that electrocuted plaintiff's decedent and was therefore liable under products liability. That claim was swiftly rejected:

> Though [defendant] Marathon's ... argument should be commended for its creativity, it is simply too farfetched to deserve any level of credence. Marathon alleges that because Normco simply assembled a light pole that was used on Marathon's rig, Normco is the "manufacturer" of the light pole. Under products liability law, a manufacturer is one who manufactures a product that it sells and hence puts into the stream of commerce.... There is no evidence that Normco put this or similar light poles into the stream of commerce. Normco is therefore neither a "manufacturer" within the meaning of products liability law nor liable to Marathon on that basis.

*Carney v. Marathon Oil Co.,* 632 F.Supp. 1037, 1041 (W.D.La.1986) (citation omitted).

■ The Restatement does not define "manufacturer", but the policy justifications for imposing liability under § 395 illustrate the types of cases in which it is appropriate.

> The justification for [the rule of § 395] rests upon the responsibility assumed by the manufacturer toward the consuming public, which arises, not out of contract, but out of the relation resulting from the purchase of the product by the consumer; upon the foreseeability of harm if proper care is not used; upon the representation of safety implied in the act of putting the product on the market; and upon the economic benefit derived by the manufacturer from the sale and subsequent use of the chattel.

Restatement (Second) of Torts § 395 comment *b.* In their entirety these justifications imply what is expressed in the case law: special duties and liabilities exist for persons and companies who regularly, and in the course of their principal business, create, assemble and/or prepare goods for sale to the consuming public. In the context of this case, however, the policy reasons for imposing the special duties and liabilities of a manufacturer on defendant USI are minimal, if any. USI was in the

business of manufacturing and selling irrigation pipe, not industrial machinery. The end-cap molding machine was constructed not for sale, but for in-house use in defendant's pipe manufacturing operations. The machine was ultimately sold to Ulysses, but only as an incident to the isolated, private sale of all assets of USI's division to that company. Ulysses' relationship with USI arising out of the sale is not that existing between a purchaser and a manufacturer whose principal business is sales of these machines. The machine was never placed on the commercial market, and USI expressly disclaimed all representations and warranties in the sale agreement. Finally, and for the same reasons, the economic benefit derived by USI from the isolated sale and subsequent use of this machine was minimal, in the sense that policy justification contemplates continuing and repeated sales transactions, the concomitant responsibilities to the purchasing public, and reliance on the manufacturer's reputation and express or implied representations. The mere foreseeability of harm alone is insufficient reason to hold anyone making an isolated sale of his goods to the heightened duties and liabilities of a manufacturer. Plaintiff has failed to establish sufficient facts to hold defendant USI to the duties and liabilities of a manufacturer as set forth in Restatement (Second) of Torts §§ 394–398.

■ The Kansas Product Liability Act, which applies to actions based on strict liability in tort, negligence, warranty, and failure to warn, provides the following definition of "manufacturer":

> "Manufacturer" includes a product seller who designs, produces, makes, fabricates, constructs or remanufactures the relevant product or component part of a product before its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer, or that is owned in whole or part by the manufacturer.

K.S.A. 60–3302(b). To the extent this definition does not expressly incorporate a requirement the manufacturer be engaged in the principal business of selling the rele-

vant product, it could be argued USI thus fits within this definition simply because defendant made this machine prior to its sale to Ulysses. Nevertheless, the Act subsequently provides that the duties of a "manufacturer" do not include warning or safeguarding against patent, open or obvious risks which a reasonable user should have realized; nor do a manufacturer's duties extend

> [t]o warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, *with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess,* could and should have taken for such user or consumer or others, under all the facts and circumstances....

K.S.A. 60–3305(a), (c). In the present case, the plaintiff user was the same person who copied, modified and built this machine for the company he now seeks to hold liable for negligent design and manufacture, and plaintiff used it sucessfully for over four years prior to his injury. There can be no question plaintiff possessed substantial experience with, and education and special knowledge of, this machine and we note, but need not find, his expertise equaled or exceeded that of USI. Under Kansas law, to whatever extent USI was the "manufacturer" of this machine, defendant labored under no duty *to this plaintiff,* with his special knowledge, awareness and experience, to guard or warn against the patent, open and obvious danger of activating the machine while his hands were located beneath the plunger.

■ Restatement (Second) of Torts § 388 details the duties and liabilities of suppliers of chattels:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chat-

tel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Under this section, particularly clause (b), a supplier is under no duty to inform the user or consumer of a condition readily observable upon casual inspection. *Id.,* § 388 comment *k.* The Kansas Supreme Court has held, in addition, that under § 388 " '[t]here is no duty to warn of dangers *actually known* to the user of a product, regardless of whether the duty rests on negligence ... or on strict liability.' " *Long v. Deere & Co.,* 238 Kan. 766, 773, 715 P.2d 1023 (1986), quoting *Jones v. Hittle Service, Inc.,* 219 Kan. 627, 639–40, 549 P.2d 1383 (1972) (emphasis in original). Thus, USI labored under no duty, as a supplier of the machine, to warn plaintiff Olson of the patent danger which was both readily observable and actually known. (*See* Depo. George Olson, pp. 88–89, 109–10, 115–17, 123–26.) Lastly, although the supplier's duty is to exercise reasonable care to inform those for whose use the article is supplied of dangers which are peculiarly within the supplier's knowledge, the mere fact a chattel is supplied for the use of others does not of itself impose upon the supplier a duty to make an inspection of the chattel, no matter how cursory, in order to discover whether it is fit for the use for which it is supplied. Restatement (Second) of Torts § 388 comments *l, m. See also* K.S.A. 60–3302(a),—3305.

The court concludes plaintiff Olson has failed to prove any facts giving rise to a cognizable legal duty owed to him by defendant USI after both he and the machine left USI's control. Contrary to plaintiff's repeated insistence, his participation and responsibility for the design and construction of this machine, including the placement of control devices and the absence of safeguards, and his subjective awareness of the obvious dangers of its operation in the condition he built it, are not facts left to the realm of comparative negligence for a jury's determination. They are operative facts which in their totality relieved defendant USI of any further duties to *this particular plaintiff* following the sale of the machine to Ulysses, whether USI is viewed as a manufacturer, supplier, or "product seller" under Kansas law.

Throughout the pretrial stage of this case, plaintiff has found much comfort in *Kimzey v. Interpace Corp.,* 10 Kan.App.2d 165, 694 P.2d 907 (1985). Plaintiff Kimzey was injured in the course of his employment with defendant Interpace, during the operation of a machine designed, manufactured and distributed by Lock Joint Pipe Company, Inc. Eighteen years before the accident Lock Joint was dissolved and merged into another corporation, which later merged into defendant Interpace, and Interpace contractually assumed "all debts, liabilities, restrictions, duties and obligations" of Lock Joint. After receiving workers' compensation benefits from Interpace, Kimzey sued his employer for the negligence, design defect and breach of warranty by Lock Joint, claiming Interpace as corporate successor was liable by reason of its contract to assume Lock Joint's liabilities. *Kimzey,* 10 Kan.App.2d at 165–66, 694 P.2d 907. The question on appeal was whether plaintiff could maintain his action against Interpace in the face of the exclusivity provisions of the Kansas Workers' Compensation Act. The court upheld Kimzey's cause of action, reasoning that Interpace by virtue of the merger occupied a second status to plaintiff, conferring upon the company obligations independent of an employer. Plaintiff Olson seizes on one sentence of the opinion where, in support of the court's holding, it states: "If Lock Joint were a separate corporation still in existence, it is equally clear that plaintiff could maintain an action against Lock Joint as a third-party tortfeasor...." *Id.,* 10 Kan.App.2d at 168, 694 P.2d 907.

The court does not dispute the well-established law that an employee/user of dangerous or defective machinery purchased by his employer may recover from the manufacturer of the machinery for injuries sustained in its operation in actions for strict product liability, negligence, failure to warn, breach of warranty, or others. *See, e.g., Long v. Deere & Co.,* 238 Kan. 766, 715 P.2d 1023 (1986). But neither *Kimzey* nor *Long* involved the unusual facts of this case, where: plaintiff is the same person who was primarily responsible for the construction of the machine; defendant had the machine built only for in-house operation, not retail sale in the course of its principal business; the danger is patent, open and obvious; the ultimate sale of the machine to plaintiff's employer was an isolated transaction, merely incidental to the private sale of all assets of a division; and the machine was sold "as is" and "where is" with an express disclaimer of all representations and warranties. The *Kimzey* dicta on which plaintiff relies is no substitute for, and provides us no guidance on, a thorough analysis of the critical issues of duty and causation in this case.

Continuing the analysis of these issues, even if there was some diminutive, amorphous duty on the part of USI to affirmatively act, in preparing the machine for sale to Ulysses, for the protection of this plaintiff with his special knowledge, experience and awareness, the next question is that of causation. Plaintiff is required to prove USI's failure to conform to the standard of conduct is a legal cause of the harm he suffered. Restatement (Second) of Torts § 328A(b),(c). It is the court's function to determine the applicability of any rules of law determining whether defendant's conduct is a legal cause of plaintiff's harm. *Id.,* § 328B(e).

"Proximate cause" of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. *State Farm Mut. Auto. Ins. Co. v. Cromwell,* 187 Kan. 573, 358 P.2d 761 (1961). In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent; the negligence must also be a substantial factor in bringing about the plaintiff's harm. Restatement (Second) of Torts § 431 comment *a.* One's negligence is not the proximate or direct cause of an injury where there is a new, separate, wholly independent and efficient intervening cause of the injury and loss. *Finkbiner v. Clay County,* 238 Kan. 856, 714 P.2d 1380 (1986). Where one's negligence appears merely to have brought about a condition or situation in which another and entirely independent and efficient agency intervenes to cause injury, the latter is deemed the direct and proximate cause, and the former only the indirect or remote cause. *George v. Breising,* 206 Kan. 221, 477 P.2d 983 (1970). The question of whether intervening causation exists is to be determined by the test of foreseeability; if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. *Sly v. Board of Educ. of Kansas City,* 213 Kan. 415, 516 A.2d 895 (1973).

Proximate cause, though ordinarily a question of fact for the jury, becomes a question of law where all evidence on which the parties rely is undisputed and susceptible of only one inference. The occasions are extremely rare where a court is justified in taking the case from the jury and deciding issues of negligence and proximate cause as a matter of law, but when under the facts those issues are so clearly established that reasonable minds could not differ it becomes the duty of the court to make that determination. *Schenck v. Thompson,* 201 Kan. 608, 443 P.2d 298 (1968); *Portwood v. City of Leavenworth,* 6 Kan.App.2d 498, 630 P.2d 162 (1981). Where it is established by the facts that two distinct successive causes, unrelated in their operation, join to produce an injury, the question of remote and proximate cause becomes one of law for the court, not one of fact for the jury. *Steele v. Rapp,*

183 Kan. 371, 327 P.2d 1053 (1958). It is the function of the court to determine

> (a) whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff;
>
> (b) whether the harm to the plaintiff is capable of apportionment among two or more causes; and
>
> (c) the questions of causation and apportionment, in any case in which the jury may not reasonably differ.

Restatement (Second) of Torts § 434(1).

Kansas intends by the use of comparative negligence to override prior concepts of liability based on notions of insurance or spreading the risk, and instead to examine each case in light of the duties imposed on the various parties related to the claimed injury. *Prince v. Leesona Corp.*, 720 F.2d 1166, 1170 (10th Cir.1983). There can be more than one party at fault in an injury and Kansas law requires the comparative fault of all actors, including those who cannot be formally joined or held legally responsible, be determined in one action. *Sell v. Bertsch and Co., Inc.*, 577 F.Supp. 1393, 1396 (D.Kan.1984).

In this case we must consider, along with the responsibilities of USI, those of Ulysses, the purchaser of the used machinery and plaintiff's Olson's employer at the time of the accident.

> "[A]n employer has a duty not to expose the employee in the discharge of his employment to perils and dangers against which the employer can guard by the exercise of reasonable care. He has a duty to warn the employee of a hazardous condition that the employer cannot guard against by the exercise of reasonable care. It is also the employer's duty to provide safe and suitable machinery, tools and implements to work with and a safe place to work. This includes the duty to exercise reasonable care in furnishing such appliances, and in keeping them in repair and making inspections and tests."

*Prince v. Leesona Corp.*, 720 F.2d 1166, 1170 n. 8 (10th Cir.1983) (quoting the trial court's instructions, which "properly defined the employer's duty of care" under Kansas law, *id.* at 1171); *see also Riggs v. Missouri-Kansas-Texas Rld. Co.*, 211 Kan. 795, 800, 508 P.2d 850 (1973). Further,

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

Restatement (Second) of Torts § 392.

Here Ulysses purchased a used machine from USI, who was not in the business of making industrial machines of this type and did not hold itself out as skilled, experienced or reputable in this regard. The machine was accompanied by an express disclaimer of all representations and warranties, Ulysses purchasing it "as is" and "where is" on the date of sale. The danger of its unguarded operation was patent, open and obvious to anyone observing the machine even casually. Ulysses did not inspect, test or guard the machine, or warn its employees/users of the danger. Quite clearly, Ulysses breached most if not all of its duties in this regard as an employer and supplier of the machine for its business purposes, by placing the machine in operation where it injured plaintiff Olson.

Were plaintiff's injuries proximately caused by USI's breach of its duties, Ulysses' breach of its duties, or both? Restatement (Second) of Torts § 452 provides:

> (1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the ac-

tor's negligent conduct is not a superseding cause of such harm.

(2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person; the failure of the third person to prevent such harm is a superseding cause.

The duty to prevent harm may be found to have shifted in either of two situations: first, by contract or agreement between the actor and the third party; and second, under any various other circumstances in which it is reasonable to find all duty and responsibility for the prevention of harm has passed to the third person. § 452 comments *e, f.*

Regarding the first situation,

By contract, by gratuitous promise, *or by fair implication from what is agreed,* it may be understood that the third person has taken over full responsibility for the situation, and that the actor is relieved of his obligation.... Assuming ... that there is no rule of law and no reason of policy to prevent [the transfer of duties and obligations for the protection of others], and that there is clear understanding that it is to be shifted, the original actor can be relieved of his duty; and in such a case the failure of the one who assumes it to act to prevent the threatened harm becomes a superseding cause.

Restatement (Second) of Torts § 452 comment *e* (emphasis added). In the case of a manufacturer whose principal business entails the continuous preparation and sale of the goods at issue, the representations of suitability and safety of the goods are implicit in their presence on the commercial market. *See Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1963). Such a manufacturer's duty to exercise reasonable care for the protection of consumers and users of those goods cannot normally be shifted; thus a warranty disclaimer is not a basis for denying the manufacturer's strict product liability under § 402A, but is simply an element in determining application of the law. *See Jackson v. Muhlenberg Hospital,* 96 N.J.Super. 314, 232 A.2d 879 (1967).

The present case is not a strict liability action against a manufacturer under § 402A, but a negligence action against the supplier of used machinery outside the principal course of its business. The focus here is reasonable care under all the circumstances, and careful consideration must be given to what is not merely the absence of any representations or warranties regarding the end-cap molding machine, but USI's affirmative and express disclaimer of all such representations or warranties. Ulysses knowingly purchased this machine, according to the sale contract, " 'as is' and 'where is' on the closing date."

[U]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty....

K.S.A. 84–2–316(3)(a). Official UCC Comment 7 to this statute makes clear the point: general terms such as "as is", and the like, "in ordinary commercial usage are understood to mean that *the buyer takes the entire risk as to the quality of the goods involved."* (Emphasis added.) There is no contention Ulysses was any less sophisticated in its business operations than was USI. The sale of this machine was an arms-length transaction between the two. Ulysses acquired the end-cap molding machine with actual knowledge there were no representations or guarantees the machine would work, was not broken, was free from defects, or was safe for users. Under the contract Ulysses thereby assumed the entire risk as to the quality of the machine, and under the law, by "fair implication" from the circumstances and what Ulysses and USI agreed upon, Ulysses acquired full responsibility for the machine, relieving USI of its duties and obligations to the users.

We pause to note, again, what this case does not involve. USI is not a manufactur-

er whose principal business is the production and sale of goods of this type; this is not a strict product liability action under § 402A. The machine was used, not new. The sale was an isolated transaction between two private parties. The warranty disclaimer is not claimed to have been illegal or unreasonable under the circumstances. The danger which ultimately caused plaintiff's injury was not latent, but open and obvious upon even a casual inspection. USI's duty, if any, was simply that of reasonable care under all the circumstances, as a supplier of a chattel. We are shown no rule of law, nor policy reason, preventing the transfer of duties regarding the operation and safety of this machine from USI to Ulysses under the unique circumstances of this case.

Yet there are other factors to be considered beyond the contract of sale. Among the factors giving rise to circumstances in which a court may properly find all duty and responsibility for the prevention of harm has passed to a third person, are: the degree of danger and the magnitude of the risk of harm; the character and position of the third person who is to take responsibility; his knowledge of the danger and the likelihood that he will or will not exercise proper care; his relation to the plaintiff or to the defendant; and the lapse of time. § 452 comment *f.*

Defendant USI relies on *Meuller v. Jeffrey Mfg. Co.,* 494 F.Supp. 275 (E.D.Pa. 1980), in support of its argument Ulysses' acts and omissions in the present case were the superseding cause of plaintiff Olson's injuries. Plaintiff Meuller fell through the opening in the floor of a foundry building owned by his employer, and sued, under theories of negligence and strict liability, the manufacturer of the machine which required the opening for its operation. The court granted defendant's motion for summary judgment, applying § 452(2) and finding the entire circumstances shifted the duty of protecting the employee from the manufacturer to plaintiff's employer. In its analysis, the court stated:

Particularly where a substantial amount of time intervenes, the overtness of the danger, the nature of the product sold, the identity of the consumer, the relative abilities of the manufacturer and the employer to remedy the alleged defect and the nature and availability of the remedy should be considered as well as any other consideration which comports with the universally accepted policy of assigning and imposing ultimate liability for negligence upon the person primarily responsible therefor. *See Roe v. Bryant & Johnston Co.,* 193 F.Supp. 804 (E.D. Mich.1961). *Cf. Vizzini v. Ford Motor Co.,* 569 F.2d at [754] 767 [ (3rd Cir. 1977) ] (" 'proximate cause' ... is a flexible concept designed to effectuate varied policies that determine whom the law holds liable for harm suffered by the plaintiff").

*Meuller,* 494 F.Supp. at 2778. The court noted 15 years elapsed between the date of sale of the machine and plaintiff's injury, during which the employer had the duty to keep the workplace safe and free from unreasonable danger and unnecessary risk, and during which the employer was or should have been aware of the manifest danger of an unprotected opening. The circumstances were found to be different from the usual § 402A case involving "a 'standard production item sold to the general public which malfunctioned or otherwise evidenced a manufacturing defect,' " because the employer was not an unsophisticated "consumer" but a large corporation engaged in the production and fabrication of steel and iron products.

Hoffman, plaintiff's employer and owner of the machine for fifteen years, stood in a position to remedy or at a minimum cope effectively with the problem. *See* W. Prosser, *Handbook on the Law of Torts,* 273 (4th ed. 1971). In other words,

the practical means to protect the working men at the plant ... was capable of implementation by [the employer] without any advice, knowledge or assistance from [the manufacturer].... [L]ending strength to the superseding cause theory is the evidence that there was [a long] interval between the date of sale and the acci-

dent, during which time [the employer] was in sole possession and control of the equipment and, in view of its obligations as an employer, justifiably would be expected to take necessary steps for the safety of its employees. *Meuller, id.* at 278–79, quoting *Schreffler v. Birdsboro Corp.,* 490 F.2d 1148, 1154 (3d Cir.1974). The duty to act for the protection of the employee shifted from the manufacturer to the employer, and the court concluded as a matter of law defendant's conduct was not the proximate cause of plaintiff's injury. *Id.* at 279. *See also Rost v. C.F. & I. Steel Corp.,* 189 Mont. 485, 616 P.2d 383 (1980) (manufacturer not liable because product owner's failure to properly maintain or inspect the product, and protect against patent dangers, was the superseding cause of plaintiff's injuries).

There are limits to application of the superseding cause exception of § 452(2). There can be no shifting of nondelegable duties in a strict products liability case under § 402A. *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481 (3d Cir. 1985); *cf. Hymon v. Blaw Knox Co.,* 511 F.Supp. 646 (E.D.Pa.1981) (manufacturer of standard production machinery not relieved of liability for defective design, under strict liability and negligence, by reason of employer's intervening negligence of removing safety shields); *but see Sell v. Bertsch and Co., Inc.,* 577 F.Supp. 1393 (D.Kan. 1984) (questions of proximate and superseding causation in a strict liability, negligence and warranty action against manufacturer are for resolution by jury). Within the context of liability for simple negligence, § 452(2) will not relieve a defendant from liability where he has made active representations inducing the third party's reliance. *Gutzan v. Altair Airlines, Inc.,* 766 F.2d 135 (3d Cir.1985). Nor can there be any superseding causation where a defendant's continuous failure to act up until the time of injury is a contributing cause to the third party's decisions and conduct, and there are other facts present increasing defendant's duty of reasonable care. *Rieser v. District of Columbia,* 563 F.2d 462 (D.C. Cir.1977). The duty of a third party

employer to provide for proper and safe conduct of work by its employees does not relieve property owners of liability for failure to exercise reasonable care regarding the condition of their property, when the employees work on and with that property and its dangerous condition causes injury. *McCarthy v. Silver Bulk Shipping, Ltd.,* 487 F.Supp. 1021 (E.D.Pa.1980). Latent defects, whether defendant is a regular supplier of goods of the type at issue, and continuing negligence on defendant's part are also factors on which these courts have based their refusal to apply § 452(2).

However, the present case involves none of these factors. USI is not a manufacturer of end-cap molding machines nor does it regularly supply these machines to others in the ordinary course of its business. The machine was not a standard production item made in contemplation of sale to the general public, but was made solely for in-house operation, and then sold only as an incident of the private sale of the entire business. USI made no active representations about the machine on which there was, or could have been, any reliance by Ulysses; USI instead expressly disclaimed all representations and warranties. Under the contract Ulysses acquired the machine assuming all risk as to its quality, fitness, safety and operation. USI does not labor under the duties and obligations imposed by strict products liability under § 402A, nor was there any continuing failure to act on its part. The danger of unguarded operation of the machine was not hidden or latent, known only to USI; it was a patent, readily observable danger of which Ulysses had constructive if not actual knowledge. Ulysses labored under well-established affirmative duties to its employees. It had exclusive possesion and control of the machine for over seven months prior to plaintiff Olson's injuries, and yet placed the machine in industrial operation without inspecting or testing it.

Plaintiff points out that *Meuller,* and the authorities on which it relied, each involved long periods of time involving many years, and that the seven month time period in this case does not meet that standard. But

the comments to § 452(2) and the cases applying that section make clear that no one factor alone determines superseding causation. Regarding the time element,

> There can be no bright lines as to when the lapse of time is itself sufficient to make a shift of full responsibility. *See Restatement (Second) of Torts* § 452(2), Illustration 9 (1965) (six months sufficient for full shift); W. Prosser, *The Law of Torts* § 44, at 289 (1971) (describing the lapse of time cases as difficult to explain and suggesting they are best understood "merely on the ground that there must be a terminus somewhere, short of eternity, at which the second party becomes responsible in lieu of the first").

*Blackburn v. Prudential Lines, Inc.,* 454 F.Supp. 1302 (E.D.Pa.1978) (holding that lapse of *two hours,* without more, insufficient for court to conclude a shift of responsibility occurred). Plaintiff's counsel also argue the fact that Ulysses was the only one in a position to provide engineering services is "not the point." But liability may shift where "a third person becomes aware of the danger and is in a position to deal with it." W. Prosser, *The Law of Torts,* at 283. The court believes Ulysses' knowledge, position, duties and omissions are the *critical* points.

Neither of the parties have addressed the element of foreseeability as it relates to proximate and superseding cause.

> An intervening act of negligence is one which actively operates in producing harm to another after the original act of negligence or omission has been committed. In determining issues of legal or direct cause, an intervening cause has been said to be material insofar as it supersedes a prior wrong as the direct cause of an injury by breaking the sequence of events between the original wrong and the injury received. One person's negligence is not the proximate or direct cause of an injury where there is a new, separate, wholly independent, and efficient intervening cause of the injury and the loss.

*Finkbiner v. Clay County,* 238 Kan. 856, 862, 714 P.2d 1380 (1986).

> Whether the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the intervening negligent act of another is determined by the test of foreseeability. If the original actor should have reasonably foreseen and anticipated the intervening act causing injury in the light of the attendant circumstances, his act of negligence would be a proximate cause of the injury. Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. When negligence appears merely to have brought about a condition of affairs or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct and proximate cause and the former only the indirect or remote cause.

*George v. Breising,* 206 Kan. 221, 227, 477 P.2d 983 (1970).

> "Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur.
>
> "While it is not a necessary element of negligence that one charged with negligence should have been able to anticipate the precise injury sustained, a person is not charged with all possible consequences of his negligent acts. He is not responsible for a consequence which is merely possible according to occasional experience, but only for those consequences which are probable according to ordinary and usual experience.

*Shideler v. Habiger,* 172 Kan. 718, Syl. ¶¶ 3, 4, 243 P.2d 211 (1952), quoted with approval in *Stevenson v. City of Kansas City,* 187 Kan. 705, 707, 360 P.2d 1 (1961), and *Sly v. Board of Education,* 213 Kan. 415, 424, 516 P.2d 895 (1973). Although *Sly* and *Stevenson* held there was no reason to foresee the malicious, willful or criminal acts of the third persons in those cases, the Kansas court has also indicated that in particular circumstances there may be no reason to foresee gross and wanton negligence by others, *Hickert v. Wright,* 182 Kan. 100, 319 P.2d 152 (1957), or to

foresee any other injuries not the natural or probable result of defendant's own negligence, *Shideler v. Habiger,* 172 Kan. 718, 243 P.2d 211 (1952). Other jurisdictions have stated the rule that the foreseeability of an event as an element of proximate cause does not include consequences which arise from unusual occurrences, nor is a person bound to anticipate negligent or unlawful conduct on the part of another. *Associated Aviation Underwriters v. U.S.,* 462 F.Supp. 674 (D.Tex.1978).

Under the peculiar facts of this case we do not think it foreseeable by USI that it would sell a piece of used machinery, with a patent danger and no warranties or representations, in a private sale under which Ulysses assumed all risk, only to have Ulysses place the machine in immediate operation without any effort to inspect, test or guard against the obvious danger, creating the situation in which plaintiff, Ulysses' employee, was severely injured over seven months later. Ulysses labored under numerous duties to plaintiff Olson with regard to this machine, duties which were heightened by the terms of the sale, the patent danger of the machine, and the lapse of time between the date of sale and plaintiff's injuries, during which Ulysses had exclusive possession and control of the machine. Even if the contract of sale was not alone sufficient, in combination with the other attendant circumstances the court finds the facts to be susceptible of only one inference: the entire responsibility for the condition, operation and safety of the end-cap molding machine shifted from defendant USI to Ulysses, plaintiff's employer.

The Tenth Circuit has recognized the *Meuller* decision, but has held that the issue of superseding negligence and shifting responsibility is properly one for a jury where "the parties dispute ... virtually all of the critical facts." *Prince v. Leesona Corp.,* 720 F.2d 1166, 1169 (10th Cir.1983). In the present case the critical facts are not disputed; the parties disagree only about their legal effect. Kansas law has long permitted a court to rule on issues of remote and proximate cause, as a matter of law, where it is established by the facts that two distinct successive causes, unrelated in their operation, produce an injury. *Steele v. Rapp,* 183 Kan. 371, 327 P.2d 1053 (1958). Finally, the recent *Zenith, Cattret,* and *Liberty Lobby* decisions by the United States Supreme Court make it clear that in summary judgment proceedings, the opponent must do more than rely on metaphysical doubts as to the material facts, or rest on a mere scintilla of evidence in support of his position.

> The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 54 U.S.L.W. 4755, 4758 (1986).

■ Applying these standards, and viewing the parties' evidence and the totality of the circumstances, the court finds that a jury properly instructed in accordance with the foregoing standards of superseding cause could reach only one conclusion: that even if defendant USI labored under any duty to plaintiff Olson in light of his special and intimate knowledge and experience with the end-cap molding machine, the unique circumstances of the sale, Ulysses' knowledge of the disclaimer of all warranties and representations, the patent danger involved, Ulysses' affirmative duties to act for the safety of plaintiff, and the lapse of time, operated together to shift the entire responsibility for this machine from USI to Ulysses, whose failure to inspect, test and guard against the obvious danger before placing the machine in operation is a superseding cause of Olson's injuries, relieving defendant USI of any liability. Third party defendant Ulysses is the only party from which plaintiff may recover for his injuries, and Ulysses' liability has been satisfied fully by payment of workers' compensation benefits to plaintiff.

**1526**

IT IS ACCORDINGLY ORDERED this 29 day of December, 1986, defendant USI's motion for summary judgment is granted, and the case dismissed in its entirety.