Jeffrey N. SELL, et al., Plaintiffs,

v.

BERTSCH AND COMPANY, INC., Defendant.

Jeffrey N. SELL, Plaintiff,

v.

INTERSTATE MACHINERY COMPANY, Defendant.

Civ. A. Nos. 80–2437, 82–2171.

United States District Court, D. Kansas.

Jan. 4, 1984.

Craig A. Strayer, Daniel R. Brown, Paul L. Redfearn, Robert J. Perkins, William H. Pickett, P.C., Kansas City, Mo., Reginald LaBunker McCullough, Wareheim & La-Bunker, Topeka, Kan., for plaintiffs.

Stewart L. Entz, Richard D. Anderson, Colmery, McClure, Funk, Letourneau & Entz, Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for Bertsch & Co., Inc.

Roseann Oliver, Phelan, Pope & John, Chicago, Ill., Francis D. Menghini, McAnany, Van Cleave & Phillips, Thomas F. Fisher, Bradley J. Baumgart, Shughart, Thomson & Kilroy, Kansas City, Mo., Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for Interstate Machinery Co., Inc.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

These two product liability actions have been consolidated for all purposes. Plaintiff seeks to recover for damages which occurred when he became entangled in the in-running nip point of a steel plate rolling machine.

Plaintiff's injuries were sustained on June 21, 1979, while he was working the night shift for the We-Mac Manufacturing Company in Atchison, Kansas. Defendants are Bertsch and Company, Inc., the manufacturer of the machine, and Interstate Machinery Company, which sold the machine as a used machine to We-Mac.

This matter is before the court on the separate motions of defendants for summary judgment on all of plaintiff's claims. The parties have completed extensive discovery, and the court is now prepared to rule.

Bertsch manufactured the machine and sold it to Groen Manufacturing Company in 1925. The transactions involving the machine for almost forty years are not known by the court, but in 1964 Interstate sold the used machine to We-Mac with a thirty (30)-day express warranty.

The steel rolling machine is designed and used to roll sheets of steel into cylindrical forms in the manufacture of large tanks. Employees of We-Mac who operate the machine guide steel into the in-running nip point of the machine, a source of potentially severe hazard to one whose hand becomes entangled in it.

As designed, there were no barrier guards to prevent a human hand from entry into the nip point. Bertsch contends that a barrier guard would have neutralized some of the functions for which the machine was designed. The evidence submitted to the court in reference to this point is controverted.

Interstate, the seller, in 1964 was engaged in the buying and selling of used machinery. Though Interstate has sold some new machinery, it has never sold new machinery manufactured by Bertsch. Interstate did advertise its used machinery and the sale of this particular machine was occasioned by an advertisement in a used machinery directory.

The deposition testimony and exhibits are conclusive that Interstate did not repair or remanufacture this machine before selling it to We-Mac, nor did Interstate add or delete any component parts or hold itself out to have done any of the above activities. At most, Interstate cleaned and painted the machine prior to sale, and perhaps reattached any parts that had become dismantled in shipping.

The decision to purchase this machine was made by Eugene McCarty, president and co-owner of We-Mac. Before this purchase, McCarty had purchased two other steel rolling machines for use at the We-Mac plant and was otherwise familiar with the use of such machines from prior work experience. After acquiring this machine, but long before the accident herein, We-Mac designed a similar machine and provid-ed sketches to Jenkins Machine Company to machine and forge the parts. We-Mac personnel constructed the base and electrical controls and motor mounts for the machine they designed.

The machine with which this lawsuit is concerned had undergone many changes in the time We-Mac owned it. We-Mac built and installed its own feed cable to make fourteen-, twelve- and ten-gauge material for 300 gallon, 520 gallon, and 1,000 gallon tanks. The drop hinge on the machine, a safety device for some of the machine's uses, was never used by We-Mac. We-Mac also replaced the machine's motor and drive train, and devised its own air brake on the spindle. Several other changes in the operation of the machine had been made by We-Mac for its purposes.

We-Mac never purchased any parts from Bertsch or Interstate and no one from Bertsch can recall ever seeing or inspecting the machine prior to the accident herein. We-Mac did not possess a Bertsch owner's manual for this machine. Training for operators of the machine was handled "one on one" by personnel at We-Mac.

Following the enactment of the Occupational Safety and Health Act in the 1970s, Bertsch developed an emergency stop system for the machine and sent a letter to Groen Company, the initial purchaser of the machine. No letter was sent to Interstate or We-Mac, and there is no indication that Bertsch ever knew Interstate or We-Mac owned the machine at any time.

In order to rule favorably on defendants' motions for summary judgment, the court must determine that the matters considered in connection with the motions disclose "that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The principal inquiry is therefore whether a genuine issue of material fact exists. *Dalke v. The Upjohn Co.,* 555 F.2d 245 (9th Cir.1977); *Hanke v. Global Van Lines, Inc.,* 533 F.2d 396 (8th Cir. 1976). A motion pursuant to Rule 56 will be denied unless the movant demonstrates

beyond a reasonable doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir.1975). Pleadings and documentary evidence are to be construed liberally in favor of a party opposing a Rule 56 motion. *Harman v. Diversified Medical Investments Corp.*, 488 F.2d 111 (10th Cir.1973), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976).

Plaintiff alleges defendants should be liable to him under theories of strict liability, negligence and breach of warranty for (a) failure to design and equip the machine with guards or safety mechanisms to prevent operator entanglement in the in-running nip point, and (b) failure to warn plaintiff or other users of the severe hazards associated with the use of the machine and of entanglement in the in-running nip point.

As to strict liability, the Kansas Supreme Court has adopted Restatement (Second) of Torts § 402A [*Brooks v. Dietz*, 218 Kan. 698, 545 P.2d 1104 (1976)], which provides as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

■ To be "unreasonably dangerous," a product must be "dangerous to an extent beyond that which would be contemplated by the ordinary person who uses it, with the ordinary knowledge common to the community as to its characteristics." *Lenherr v. NRM Corp.*, 504 F.Supp. 165, 172 (D.Kan.1980).

■ In this case, the questions of whether this product was "defective" or "unreasonably dangerous" at the time of manufacture are fact questions to be determined by the jury. Manufacturers may not be held strictly liable for failure to design safety features if the technology to do so is unavailable at the time the product is made. *Rexrode v. American Laundry Press Co.*, 674 F.2d 826 (10th Cir.1982). The evidence presented to the court is inconclusive as to the feasibility for the manufacturer of appropriate safety devices in 1925, the year of initial manufacture and sale.

Bertsch contends that it should not have to go to trial on the strict liability or negligence issues because the negligence of WeMac was a superseding cause of plaintiff's injuries as a matter of law.

Bertsch relies on Restatement (Second) of Torts § 452(2), which states: "Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause."

■ Causation is an element to be proved by plaintiff in presenting his case. In order to recover in a products liability action, plaintiff must prove that the defective product is the actual and proximate cause of the injury. *Wilcheck v. Doonan Truck & Equipment, Inc.*, 220 Kan. 230, 552 P.2d 938 (1976).

■ Kansas follows a comparative fault doctrine which is specified by statute. K.S.A. 60–258a. There can be more than one party at fault in an injury and the comparative fault of all the actors, including those who cannot be formally joined as parties or held legally responsible, is determined in one action. *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 374, 634 P.2d 1127, 1132 (1981). The doctrine of comparative fault applies to

claims based on strict liability. *Kennedy v. City of Sawyer*, 228 Kan. 439, 452, 618 P.2d 788, 798 (1980).

The question of causation in a product liability case is one for resolution by the jury in the absence of conclusive proof that makes only one result possible. *Palmer v. Ford Motor Company*, 498 F.2d 952 (10th Cir.1974). Thus, to grant Bertsch's motion this court must determine that there is conclusive proof that the actions of We-Mac were the superseding cause of plaintiff's injuries and that a jury could not, as a matter of law, assign any percentage of liability to Bertsch. This court is not willing to conclude at this stage in the proceedings that Bertsch may be relieved of all possible causal responsibility which a jury might find.

Bertsch further argues that it had no duty to warn in this case because the machine's hazards were open and obvious and because We-Mac, the owner of the machine, was fully aware of the dangers of the machine. This court has held that "a product may be defective without any ascertainable defect in the product and although the product was precisely what it was intended to be if the manufacturer fails to give adequate and timely warnings as to the dangers or hazards which may result from a foreseeable use or misuse of the product." *Lenherr v. NRM Corp.*, *supra*, 504 F.Supp. at 172.

A failure to warn may be negligence under Restatement § 388 or may make the product "defective" under Restatement § 402A. *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 635, 549 P.2d 1383, 1391–92 (1976). Under either theory, the duty to warn is one of ordinary care. *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 661 P.2d 348 (1983).

In *Mays, supra*, the incident causing injury had occurred before the enactment by the Kansas Legislature of K.S.A. 60–3305. Nevertheless, the Kansas Supreme Court adopted the language of § 60–3305 as stating the applicable rule of law:

"In any product liability claim any duty on the part of the manufacturer or seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;

"(b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or

"(c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product."

Construing the evidence liberally in favor of plaintiff, this court holds that plaintiff may go to trial against Bertsch on the question of whether Bertsch breached a duty of ordinary care in failing to warn of the hazards of the machine herein.

As to the claims against Interstate, a preliminary question must first be addressed: may a seller of a used product, who has not repaired or remanufactured the product, be held strictly liable in tort to a person injured by a defect in that product?

The Kansas Supreme Court has had many occasions to apply strict liability to sellers of new products, but has never expressly determined whether the doctrine extends to sellers of used products. The courts of other states which have considered this issue are nearly evenly split. Where the state law issue is a question of first impression, a federal district court judge must apply the law as he believes the state's highest court would declare it to be

if it had the opportunity to do so. *White v. United States,* 510 F.Supp. 146 (D.Kan. 1981); *Benton v. Union Pac.R. Co.,* 430 F.Supp. 1380 (D.Kan.1977).

█ This court may look to the language of the decisions of other jurisdictions, as well as the Kansas strict liability cases and the actions of the Kansas Legislature, in attempting to ascertain how the Kansas Supreme Court would decide this issue.

Those courts imposing strict liability on sellers of used products generally have done so because Restatement § 402A is not limited by its terms to sellers of new products. *Turner v. International Harvester Co.,* 133 N.J.Super. 277, 336 A.2d 62 (1975); *Hovenden v. Tenbush,* 529 S.W.2d 302 (Tex.Civ.App.1975).

Those courts which have declined to extend the doctrine of strict liability to sellers of used products have noted that the policy reasons which underlie strict liability are not fully applicable to sellers of used products. Thus, in *Tillman v. Vance Equipment Co.,* 286 Or. 747, 596 P.2d 1299 (1979), the Oregon Supreme Court held that a seller of a used crane was not strictly liable for a defect created by a manufacturer. The court looked to the purposes behind the strict liability doctrine and found them inapplicable to a used products seller. It identified the justifications for the strict liability doctrine as:

"* * * [C]ompensation (ability to spread the risk), satisfaction of the reasonable expectations of the purchaser or user (implied representational aspect), and over-all risk reduction (the impetus to manufacture a better product) * *." *Id.,* 596 P.2d at 1303.

In considering the reasonable expectations of a user or purchaser of a used product, the Oregon court stated:

"We conclude that holding every dealer in used goods responsible regardless of fault for injuries caused by defects in his goods would not only affect the prices of used goods; it would work a significant change in the very nature of used goods markets. Those markets, generally speaking, operate on the apparent understanding that the seller, even though he is in the business of selling such goods, makes no particular representation about their quality simply by offering them for sale...." *Id.* 596 P.2d at 1303.

As to the purpose of over-all risk reduction, the Oregon court stated: "... the position of the used-goods dealer is normally entirely outside the original chain of distribution of the product.... The dealer in used goods generally has no direct relationship with either manufacturers or distributors. Thus, there is no ready channel of communication by which the dealer and the manufacturer can exchange information about possible dangerous defects in particular product lines or about actual and potential liability claims." *Id.* 596 P.2d at 1304.

Similarly, in *Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 329 N.E.2d 785 (1975), the Illinois Supreme Court refused to impose strict liability upon a used car dealer since the dealer would "in effect become an insurer against defects which had come into existence after the chain of distribution was completed, and while the product was in the control of one or more consumers."

In *Kennedy v. City of Sawyer, supra,* the Kansas Supreme Court set forth two purposes for imposition of strict liability for foreseeable injury to third parties: (1) a desire to achieve maximum protection for the injured party," and (2) "to promote the public interest in discouraging the marketing of products having defects that are a menace to the public." *Id.,* 228 Kan. at 445–46, 618 P.2d at 794. "Under the doctrine of strict liability the liability of a manufacturer *and those in the chain of distribution* extends to those individuals to whom injury from a defective product may reasonably be foreseen...." *Id.* (Emphasis supplied.)

The purpose of discouraging the marketing of defective products would not be furthered by extending strict liability to the seller of used goods who has not repaired or remanufactured the goods. In the case at bar, the used product seller was dealing

with a 40-year-old product made by a manufacturer with whom the seller had no sort of business relationship. This used product seller was so far removed from the initial chain of distribution that it could not have discouraged the production and manufacturing of a defective product.

A used product dealer is therefore different from a seller in new products in that a retailer of new products generally has a direct relationship with a manufacturer or distributor and a ready channel of communication in which to exchange product information. Furthermore, the expectations of a buyer of a used product generally are not the same as those of a buyer of a new product.

▮ The Kansas Legislature, subsequent to the occurrence which is the subject of this lawsuit, passed the Kansas Product Liability Act of 1981, K.S.A. 60–3301 *et seq.*, which limits the scope of product liability actions by creating a "useful safe life" presumption for products and a statute of repose. Although this statute is not applicable to the case at bar, the intent of the legislature to limit the scope of products liability actions is a factor which can be considered by the court.

▮ It is the conclusion of this court that the Kansas Supreme Court would declare that the seller of a used product who has not repaired or remanufactured the product is not subject to strict liability if that product is defective. Therefore, this court must grant Interstate's motion for summary judgment on plaintiff's strict liability claim.

Interstate has raised several alternative arguments by which it contends it cannot be held strictly liable on the facts of this case. In light of the court's decision in Interstate's favor on the strict liability for used products issue, these other arguments will not be addressed by the court.

Plaintiff also seeks to hold Interstate liable for negligence in failing to equip this product with safety devices and for failure to warn of the product's hazards.

▮ Under Kansas law, negligence does not exist in the abstract, but contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it. *Tappen v. Ager,* 599 F.2d 376 (10th Cir.1979).

▮ To find that Interstate was negligent in failing to equip this machine with safety devices would require a finding that Interstate, as a dealer in used products, has a duty to redesign or remanufacture the products it sells. The duty of a used machinery seller does not extend so far.

However, in certain circumstances the duty of ordinary care may require a used machinery manufacturer to warn a buyer of the hazards associated with the product. The question of whether this duty was breached is a question of fact to go to trial.

Plaintiff's complaint also alleges breach of express and implied warranties by the defendants herein. In the matters presented to the court in support of defendants' motions for summary judgment, defendants showed that no express warranties were either given or relied upon herein and that the applicable statute of limitations period for any possible breach of implied warranty claim has passed. Plaintiff did not respond to these arguments and can only be assumed to have abandoned his warranty claims.

Therefore, the court must grant defendants' motion for summary judgment on the warranty claims.

## CONCLUSION

Having extensively reviewed the materials before this court for consideration on these motions, the court finds the following issues remain for trial:

(1) Was the machine as manufactured by Bertsch in 1925 in a defective condition unreasonably dangerous to the user or consumer so as to subject Bertsch to strict liability in tort?

(2) Was Bertsch negligent when, in 1925, it designed and manufactured this machine without guards or other safety devices as plaintiff claims were necessary?

(3) Did either Bertsch or Interstate breach a duty of ordinary care in failing to warn of the hazards associated with the operation of this machine?

(4) If the product is determined to be defective or either defendant is found to be negligent, how much of the causal responsibility should be attributed to each action under the comparative fault doctrine as applied under Kansas law?

IT IS BY THE COURT THEREFORE ORDERED that the motions of defendants Interstate and Bertsch are granted in part and denied in part in accordance with the terms of this order.