REBECCA A. KIRKMAN, by Margaret Kirkman, her Mother and Next Friend, Plaintiff, v. DONALD KIRKMAN et al., Defendants (Bushnell Tank Company et al., Defendants and Counterclaimants; Donald Kirkman et al., Counterdefendants; Bushnell Tank Company, Third-Party Plaintiff-Appellant; Steven Jones, Third-Party Defendant-Appellee).—LARRY KIRKMAN, Plaintiff, v. TRACEY WALKER, d/b/a Whitey's Car Wash, et al., Defendants (Bushnell Tank Company et al., Defendants and Counterclaimants; Bushnell Tank Company, Third-Party Plaintiff-Appellant; Don Kirkman, Third-Party Defendant; Steven Jones, Third-Party Defendant-Appellee).

Fourth District   Nos. 4—89—0745, 4—89—0746 cons.

Opinion filed March 8, 1990.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellant.

Robert P. Moore and David R. Moore, both of Law Offices of Robert P. Moore, P.C., of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Bushnell Tank Company (Bushnell) appeals from an order of the Douglas County circuit court granting summary judgment for third-party defendant Steven Jones in each of the cases consolidated here on appeal.

We affirm.

Jones purchased a new 1986 Chevrolet pickup truck for use in his insulation hauling business. He purchased a 110-gallon auxiliary gas tank, manufactured by Bushnell, from Mattoon Rural King Supply, Inc. (Rural King), on November 1, 1987. The tank was installed in the bed of the truck next to the cab.

Don Kirkman began driving the truck for Jones in February 1987. In March, Don noticed a "pinhole" leak on a welded seam of the auxiliary tank and patched it himself. Jones learned of the leak when he saw Don fixing it. Don continued driving the truck for Jones until Don purchased it on July 1, 1987. After Don patched the tank in March 1987, it did not leak again until July 4, 1987.

On July 4, 1987, Don drove the truck to Tuscola, Illinois, to purchase gasoline for the truck and auxiliary tank. He was accompanied by his two-year-old daughter, Rebecca, Don's brother, Larry Kirkman, and Larry's son, Tony. Don noticed the auxiliary tank was leaking again, so he drove to a nearby store and purchased a gas tank repair kit. Don then drove to a car wash in Tuscola to repair the tank. Tracey Walker owns the car wash.

Don and Larry decided to repair the truck at the car wash so the leaking gasoline could run into a drain. They attempted to repair the tank while the children remained in the backseat of the truck's cab. The gasoline dripping into the car wash's drain ignited, resulting in a fireball and fire which destroyed the truck and car wash and severely injured Rebecca and Larry.

Rebecca, through her mother, filed suit against her father, Walker, and Bushnell. Larry sued Walker, Rural King, and Bushnell. Rebecca alleged Bushnell sold the tank to Rural King, which in turn sold it to Jones. The tank left the manufacturer allegedly in an unreasonably dangerous condition because the seams were improperly welded, resulting in the leak. The leak and accompanying fumes from the leaking gasoline allegedly caused the fire, which injured Rebecca.

Bushnell filed a third-party complaint against Jones, alleging Rebecca's injuries were proximately caused by Jones' negligence. Jones' alleged acts of negligence included failing to notify Bushnell of the prior leak, failing to request repair or replacement under Bushnell's warranty, failing to have the tank inspected and repaired by a

qualified person after the first leak, and allowing Don to attach a patch on the leak. Bushnell sought contribution from Jones.

Larry's complaint against Bushnell contained allegations similar to those in Rebecca's complaint against Bushnell. Bushnell filed another third-party complaint against Jones repeating the allegations made against Jones in the third-party complaint filed in Rebecca's case.

Jones moved for summary judgment against Bushnell, alleging there were no genuine issues of material fact. Title to and possession of the truck had passed to Don four days before the accident. Don had driven the truck for four months before purchasing it from Jones and had noticed and repaired the first leak. The tank did not leak after Don repaired it in March until July 4. Jones argued a finding by the circuit court that he owed Rebecca or Larry a duty would violate Illinois public policy. Finally, even if he did owe a duty, Jones argued the intervening acts of Don proximately caused the injuries.

The circuit court granted Jones' motion for summary judgment, finding that Jones did not have title to or possession of the truck and tank on the date of the accident and owed no duty to Rebecca or Larry.

■ Summary judgment is appropriate where the pleadings, depositions, and affidavits show (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223, 1224; see also Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) "On appeal from an order granting summary judgment, the reviewing court must consider all grounds and facts urged below to determine if a genuine issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law." *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 741, 415 N.E.2d 434, 440.

■ Bushnell asserts Jones is subject to liability in tort under the provisions of section 388 of the Restatement (Second) of Torts. That section states,

> "One who supplies directly *** a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the matter for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, *and*

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, *and*

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." (Emphasis added.) Restatement (Second) of Torts §388, at 300-01 (1965).

■ The scope note preceding this section indicates it applies to all persons who supply chattel for the use of others. Comment *k* makes clear that one supplying a chattel for another must warn of dangerous conditions, "if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved." Restatement (Second) of Torts §388, comment *k*, at 306 (1965).

In *Trust Co. v. Lewis Auto Sales, Inc.* (1940), 306 Ill. App. 132, 28 N.E.2d 300, the appellate court affirmed a trial court ruling directing a verdict for defendant, seller of a used car. Defendant sold the used car to Ozeran. Ozeran's friend Glickman usually drove the car; Ozeran drove it only on the date of the accident. Glickman testified the brakes on the car never functioned properly. The car was taken to the defendant several times for repair, but the problem was never remedied. The brakes failed while Ozeran was driving, and he struck and killed Aranoff.

The court wrote,

"In the Restatement of the Law on Torts, §388, it is said to be the secondhand dealer's duty to inform the buyer of the defective condition of the automobile. In the instant case the testimony on behalf of plaintiff shows beyond doubt that Ozeran, the vendee, knew of the defective condition of the brakes.

\*\*\* We are of the opinion the trial court correctly ruled upon defendant's motion for a directed verdict, and the judgment is affirmed." *Trust Co.*, 306 Ill. App. at 137, 28 N.E.2d at 302.

■ A later Illinois case described the duty to warn as follows. "In Illinois, the duty to warn exists where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur. [Citation.] An alternative formulation of the duty is found in section 388 of the Restatement (Second) of Torts." (*Baylie v. Swift & Co.* (1975), 27 Ill. App. 3d 1031, 1042, 327 N.E.2d 438, 447.) The court went on to discuss comment *k* of section 388. The supplier has a duty to warn only when he has no reason to believe the person receiving the chattel will perceive the danger.

"This is akin to the notion of 'unequal knowledge' \*\*\* and ap-

pears to reflect the thinking of this court when it noted that '[t]he purpose of warning is to apprise a party of the existence of a danger of which he is not aware \*\*\*. There is no duty to warn against risks which are known and obvious.' *Bakovich v. Peoples Gas Light & Coke Co.*, 45 Ill. App. 2d 182, 188-89, 195 N.E.2d 260." *Baylie*, 27 Ill. App. 3d at 1043, 327 N.E.2d at 447.

■ The pleadings, depositions, and affidavits in this case indicate Jones knew of the previous leak in the gas tank but did not warn Don of the dangers before Don purchased the truck. However, the language of section 388, comment *k* and the case law analyzing section 388 indicate Jones was not required to warn Don.

Don was driving the truck when the first leak developed and he fixed it. He subsequently drove the truck for four months, which meant he was responsible for filling the tank with gasoline. Finally, Don's deposition testimony indicates he understood and appreciated the dangers present when gasoline leaked out of the tank. His awareness of these dangers prompted him to go to the car wash to attempt to repair the tank. Jones knew Don knew about the first leak as it was Don who repaired the leak. This, coupled with the fact that Don drove the truck for four months, provided Jones with ample reason to believe Don would discover a future leak and realize the danger involved. There was no unequal knowledge between the seller and buyer in this instance. Thus, Jones is not subject to liability in tort under section 388.

Section 389 of the Restatement (Second) of Torts states,

"One who supplies directly \*\*\* a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, *and* who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character." (Emphasis added.) Restatement (Second) of Torts §389, at 311 (1965).

Again, Don was not ignorant of the dangerous character of the auxiliary tank, either before or after he purchased it. Jones is not subject to liability in tort under section 389.

■ Bushnell raises an additional issue under Illinois' contribution

statute (Ill. Rev. Stat. 1987, ch. 70, par. 302(a)), alleging that public policy considerations underlying the statute require that Jones remain a party to the lawsuits until juries can determine whether he bears any liability.

The statute states, in pertinent part,

> "Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property *** there is a right of contribution among them, even though judgment has not been entered against any or all of them." (Ill. Rev. Stat. 1987, ch. 70, par. 302(a).)

Because we have already determined Jones is not liable in tort to Bushnell, the contribution statute is inapplicable, and we decline to address the merits of this argument.

There were no genuine issues of material fact and Jones was entitled to judgment as a matter of law. The circuit court properly granted Jones' summary judgment motion.

Judgment of the circuit court is affirmed.

Affirmed.

LUND and SPITZ, JJ., concur.