Irene M. STILLIE, Plaintiff,

v.

AM INTERNATIONAL, INC., et al., Defendants.

Civ. A. No. 91–2213–EEO.

United States District Court, D. Kansas.

Dec. 21, 1993.

Gene E. Schroer, Schroer, Rice, P.A., Topeka, KS, for plaintiff.

John M. McFarland, Terry J. Brady, William F. Ford, Jr., Gage & Tucker, Kansas City, MO, Michael T. Hannafan, Michael T. Hannafan & Associates, Ltd., Chicago, IL, Stephen A. Murphy, Westwood, KS, Heather Suzanne Woodson, Stinson, Mag & Fizzell, Overland Park, KS, David E. Everson, Jr., Stinson, Mag & Fizzell, Kansas City, MO, and Ronald W. Fairchild, Dianna L. Mans, and ·Sheldon J. Moss, Porter, Fairchild, Wachter & Haney, Topeka, KS, for defendants.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of defendant Peter H. Johnson, d/b/a Book Machine Sales, for summary judgment (Doc. # 162). For the reasons set forth below, defendant's motion will be granted in part and denied in part. .

*Factual Background*

For purposes of the instant summary judgment motion, the following facts are uncontroverted. This case arises out of injuries allegedly sustained by plaintiff Irene M. Stillie on June 21, 1989, while operating a Wohlenberg Three Knife Trimmer machine at the Econo–Clad Books plant in Topeka, Kansas. The trimmer machine was originally manufactured by H. Wohlenberg K.G. in 1965 and delivered to its original user. Euro Graphic Bindery Machines, B.V., a Holland company, purchased the trimmer machine from a prior user, "rebuilt" it, and sold it to defendant Book Machine Sales ("BMS") as a rebuilt machine in January 1984. BMS, in turn, sold the machine to Econo–Clad Books, plaintiff's employer.

BMS was founded in 1980 by Peter Johnson to sell new and reconditioned bookbinding machines. Between 1980 and 1984, BMS sold 71 bookbinding machines. BMS also rebuilt numerous bookbinding machines, including approximately twenty Wohlenberg machines, by completely tearing down the machines, servicing or replacing parts as needed, and reassembling them.

Before selling the trimmer machine to Econo–Clad, BMS ran approximately twenty hours of cycling tests and conducted an equivalent amount of manufacturing tests. BMS insured that the trimmer complied with Wohlenberg's parts book and operating specifications. BMS placed the following nameplate on the machine:

### BOOK MACHINE SALES

New and Reconditioned
Book Binding Equipment

Sterling, Pennsylvania 18463
Phone (717) 689–2687 Telex 84–7645

No. DS–571 R.B. May '84

BMS delivered and installed the trimming machine at Econo–Clad and provided initial training to Econo–Clad employees about necessary safety precautions and how to operate the machine. Econo–Clad employees conducted all subsequent training on the trimmer.

In the five years between the installation of the trimmer machine in May 1984 and plaintiff's accident in June 1989, there were no reports of the machine malfunctioning in the manner described by plaintiff. BMS admits that books became jammed in the normal operation of the machine an average of three to five times per day. The normal procedure for removing a jammed book was to reach over the clamp and wiggle the book until it released. No written warnings or instructions on the trimmer machine, in the operations manual, or otherwise provided by

BMS, discussed how to safely remove a jammed book.

On June 21, 1989, the day plaintiff was injured, a book became lodged in the trimmer machine while plaintiff was operating it. Plaintiff states that she depressed the red safety switch to stop the machine and moved to the operational side of the machine. While attempting to remove or straighten the book, plaintiff states that the clamp "jumped forward" eight to ten inches, struck her on her left wrist, and began to pull her arm into the cutting mechanism of the machine. Plaintiff then jerked her arm back and out of the machine. Plaintiff was apparently injured when the clamp struck her wrist. BMS does not controvert that the events leading to the alleged injury occurred as plaintiff states, but adds that plaintiff depressed the foot pedal while attempting to remove the book.

Plaintiff first operated the trimming machine in June 1988 as a back-up operator when the regular operator was gone. Plaintiff contends that her level of experience in operating the trimmer machine was less than average. Plaintiff maintains that she did not know it was possible to inadvertently engage the machine by depressing the foot peddle while removing a jammed book. She urges that she was never personally warned about this danger and stresses that the trimming machine did not have any warning labels to alert her to this possibility.

However, plaintiff admitted in her deposition that she felt she had all the necessary training, experience, and knowledge to safely operate the trimming machine. Plaintiff stated that she knew not to put her hands inside the operational part of the machine unless it was stopped and her foot was off the start peddle. Plaintiff admitted that she believed the trimming machine was dangerous and that she had to be "extra cautious."

*Summary Judgment Standards*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Clemmons v. Bohannon,* 956 F.2d 1523, 1525 (10th Cir.1992) (quoting Fed.R.Civ.P. 56(c)).

█ The moving party has the burden of showing the absence of a genuine issue of material fact. An issue is "material" only when the controversy is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This burden may also be discharged "by 'showing'—that is, establishing for the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

█ Under Rule 56(a), summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. To withstand a motion for summary judgment, the nonmoving party is required to "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356 (quoting Rule 56(e)). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading." *Id.* at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* Where the nonmoving party makes a showing of contested facts, the court must consider factual inferences tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984),

*cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

### Strict Liability

■ In order to present a prima facie case under the doctrine of strict liability, plaintiff must produce evidence that: 1) the injury resulted from an unreasonably dangerous condition of the product; and 2) the condition existed at the time the product left the defendant's control. *Alvarado v. J.C. Penney Co., Inc.,* 768 F.Supp. 769 (D.Kan.1991) (citing *Mays v. Ciba–Geigy Corp.,* 233 Kan. 38, 661 P.2d 348, 360 (1988)).

The plaintiff's first theory under the doctrine of strict liability is that BMS was involved in the remanufacture of the trimmer machine. BMS admits that it tested the trimmer prior to delivering and installing it at Econo–Clad in May 1984 and that it provided training on the machine to Econo–Clad employees. Even so, BMS contends it was not involved in rebuilding or remanufacturing the trimmer machine. Rather, BMS maintains, the machine was rebuilt by Euro Graphic *before* BMS purchased it.

BMS argues that it is entitled to summary judgment on plaintiff's remanufacture theory of strict liability based, primarily, on *Sell v. Bertsch & Co.,* 577 F.Supp. 1393 (D.Kan. 1984). In *Sell,* Judge Saffels held that, under Kansas law, the seller of a used product who had not repaired or remanufactured the product could not be held strictly liable in tort to a person injured by a defect in the product. *Id.* at 1399. Judge Saffels expressly recognized that the Kansas Product Liability Act of 1981, Kan.Stat.Ann. § 60–3301 *et seq.* ("KPLA"), did not apply in *Sell.* Nonetheless, in analyzing the issue with an eye toward predicting how the Kansas Supreme Court would decide the matter, Judge Saffels considered the impact of the Kansas Products Liability Act and the legislature's purpose in enacting the Act.

To withstand summary judgment, plaintiff attempts to distinguish the instant case from *Sell.* Plaintiff contrasts the machine in *Sell,* which was fifty-four years old and had not

been rebuilt, with the trimmer machine in this case, which was twenty-five years old and, according to plaintiff, was "remanufactured" by BMS. Notwithstanding these distinctions, the instant case is more analogous to *Sell* than it is distinguishable. Both cases involved used products several decades old. The plaintiffs in both cases claimed that the machine at issue had been rebuilt by the used product seller. *See Sell,* 577 F.Supp. at 1399 (holding that cleaning, painting, and reattaching dismantled parts prior to reselling was not rebuilding).[1]

Plaintiff also maintains that, unlike the used product seller in *Sell* (where the KPLA did not apply), BMS can be held strictly liable as a "manufacturer" under the following definition:

> a product *seller who* designs, produces, makes, fabricates, constructs, or *remanufactures* the relevant product or component part of a product before its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that *holds itself out* as a manufacturer . . .

Kan.Stat.Ann. § 60–3302(b) (Supp.1993) (emphasis added). Plaintiff urges that BMS was a manufacturer because BMS tested, delivered, installed, and serviced the trimming machine.

■ The public policy considerations behind imposing strict liability are: 1) the manufacturer is better able to anticipate and guard against the recurrence of hazards; 2) the manufacturer is better able to redistribute the often overwhelming cost of injury among the consuming public; and 3) companies should be discouraged from marketing defective goods. *Savina v. Sterling Drug, Inc.,* 247 Kan. 105, 114, 795 P.2d 915, 923 (1990). Plaintiff argues that public policy considerations require the imposition of liability on BMS in this case for the following reasons: 1) BMS should be encouraged to anticipate and guard against the recurrence of such hazards; 2) BMS is better able to redistribute the costs of injury; and 3) BMS should be discouraged from marketing defective used machines. We disagree. As Judge

---

1. To the extent that plaintiff is distinguishing *Sell* based on Euro Graphic's alleged rebuilding of

the trimmer, we know of no authority for imputing any rebuilding by Euro Graphic to BMS.

Saffels discussed in *Sell,* the policy reasons underlying strict liability are not fully applicable to sellers of used products. *Sell,* 577 F.Supp. at 1398. "The purpose of discouraging the marketing of defective products would not be furthered by extending strict liability to the seller of used goods who has not repaired or remanufactured the goods." *Id.*

■ Under the facts of the instant case, we do not believe that the Kansas Supreme Court would hold that testing, delivery, installation, training, and servicing by BMS was "remanufacturing" as contemplated by section 60–3302(b). The holdings of *Crandell v. Larkin and Jones Appliance Co.,* 334 N.W.2d 31 (S.D.1983) (used-product merchant who rebuilt or reconditioned goods was subject to strict liability), and *Anderson v. Olmsted Utility Equip., Inc.,* 573 N.E.2d 626 (Ohio 1991) (defendant who undertook to remanufacture or rebuild an aerial device was subject to strict liability doctrine), do not convince us otherwise. Significantly, the defendants in those cases clearly undertook to remanufacture or rebuild the products in question.

As a matter of law, we hold that under the uncontroverted facts of the instant case, BMS did not remanufacture the trimmer as that term is used in § 60–3302(b). Accordingly, BMS is entitled to summary judgment as a matter of law on plaintiff's remanufacture theory of strict liability.

■ However, summary judgment will not be granted on plaintiff's second theory of strict liability, i.e., that BMS held itself out as a manufacturer. Kan.Stat.Ann. § 60–3302(b). Plaintiff contends that BMS held itself out as a manufacturer by placing its nameplate containing the notation "R.B. May, 1984" on the machine. Plaintiff urges that "R.B. May, 1984" denotes that the machine was rebuilt in May 1984. Thus, plaintiff argues, the nameplate created the impression that BMS rebuilt the machine. We have serious doubt that plaintiff could withstand summary judgment based on BMS's nameplate alone. However, plaintiff has also submitted deposition testimony of Peter H. Johnson, President of BMS, which creates a factual question about whether BMS re-

moved a nameplate placed on the machine by Euro Graphic prior to selling the machine to Econo–Clad. In light of this evidence, we cannot state, as a matter of law, that BMS did not hold itself out as a manufacturer under section 60–3302(b) by removing Euro Graphic's nameplate and replacing it with its own or that no reasonable jury could so find. *See Alvarado v. J.C. Penney Co.,* 713 F.Supp. 1389, 1393 (D.Kan.1989) (denying summary judgment because factual disputes existed about whether the defendant held itself out as a manufacturer by placing its own label inside the garment.). Accordingly, out of an abundance of caution, defendant's motion for summary judgment on plaintiff's holding out theory of strict liability will be denied.

### Negligence Theories

■ Plaintiff also alleges BMS's liability for negligence. Liability for negligence does not exist in Kansas absent a legal duty and a violation of that duty by the person owing it. *Tappen v. Ager,* 599 F.2d 376 (10th Cir.1979); *Sell,* 577 F.Supp. at 1399. Thus, BMS may not be held liable for negligent design of the trimming machine unless it had a legal duty to redesign or remanufacture the trimmer before reselling it. We hold that BMS was not under such a duty. Judge Saffels considered this question in *Sell* and held that a used machinery seller is under no duty to redesign or remanufacture the products it sells. *Sell,* 577 F.Supp. at 1399. We find this reasoning convincing and adopt it in the instant case. Accordingly, BMS's motion for summary judgment on plaintiff's negligent design claim will be granted.

■ We now turn to plaintiff's negligent failure to warn claim. Defendant maintains that plaintiff may not recover for negligent failure to warn if plaintiff fits within one of the three categories of users excluded by Kan.Stat.Ann. § 60–3305 (1983): 1) plaintiff was a sophisticated user, § 60–3305(a); 2) similarly situated users took precautions plaintiff failed to take, § 60–3305(b); or 3) the danger of activating the trimming machine accidentally was patent, open and obvious, § 60–3305(c). We need not engage in a lengthy discussion of these three categories

because we hold that plaintiff has raised genuine issues of material fact about whether plaintiff was within any of the three excluded-user categories. Accordingly, summary judgment on plaintiff's claim for negligent failure to warn must be denied.

■ Defendant next raises Kan.Stat.Ann. § 60–3306, which provides that a product seller is not subject to liability if the seller can establish: 1) the seller had no knowledge of the defect; 2) seller could not have discovered the defect; 3) the seller was not a manufacturer; 4) the manufacturer is subject to service of process in Kansas; and 5) judgment against the manufacturer is reasonably certain of being satisfied. Kan.Stat.Ann. § 60–3306(a)–(e). BMS simply contends that the trimmer was not defective and, therefore, BMS had no knowledge of a defect and could not have discovered one. We find, however, that plaintiff has raised genuine questions of fact about whether the trimming machine was defective. Accordingly, BMS's motion for summary judgment based on section 60–3306 must be denied and we need not reach the issues raised with respect to the remaining three requirements of Kan.Stat.Ann. § 60–3306.

Finally, BMS argues that it is not liable because the useful safe life of the trimmer machine was expired. Kan.Stat.Ann. § 60–3303(a) limits a product seller's liability to injuries caused by the product within the useful safe life of the product. The useful safe life begins at delivery and continues through the time that the product would normally perform in a safe manner. *Id.* at § 60–3303(a)(1). "Delivery" is the initial transfer to the first purchaser not engaged in the business of reselling the product. *Id.*

■ Plaintiff contends that the rebuilding of the trimmer machine in 1984 commenced a new useful safe life period. Kan.Stat.Ann. § 60–3303(a)(1)(E) lists "any modification or alteration of the product by a user or third party" as especially probative evidence in determining whether a product's useful safe life had expired. Thus, we believe, evidence that the trimmer had been recently rebuilt would be probative to overcome the ten-year useful safe life presumption of section 60–3303(b)(1).

■ BMS takes contradictory positions with regard to whether Euro Graphic rebuilt the trimmer machine. In its statement of uncontroverted facts, BMS asserts, "Euro Graphic Bindery Machines B.V. *rebuilt* the trimmer machine prior to selling it to BMS." However, on the useful safe life issue, BMS asserts that Euro Graphic Services did not rebuild or remanufacture the trimmer. BMS contends Euro Graphic performed only the maintenance necessary to bring the trimmer into compliance with the original Wohlenberg operating specifications and to wire the trimmer for U.S. electric current, but did not make any design modifications to the trimmer. Thus, BMS argues, the trimmer's useful safe life did not begin anew when Euro Graphic worked on the machine in 1984. Implicit in defendant's argument is that, if Euro Graphic rebuilt the trimmer, then the trimmer's useful safe life began again in 1984.

Plaintiff maintains that Euro Graphic rebuilt the trimmer machine and that BMS was involved in the rebuilding of the machine. We cannot state, as a matter of law, that Euro Graphic did not remanufacture or rebuild the trimmer machine in 1984. Accordingly, defendant's motion for summary judgment based on the expiration of the trimmer's useful safe life will be denied.

In anticipation of the possible ruling by the court that the trimmer's useful safe life ran from 1965, the date of original delivery, the parties also briefed the issue of whether the alleged defect was discoverable prior to the expiration of the ten-year presumptive useful safe life. *See* Kan.Stat.Ann. § 60–3303(b)(2)(D). Although we need not reach this issue because we have declined to hold that the useful safe life ran from the 1965 delivery, we note that factual questions about the patent discoverability of the alleged defect would have precluded summary judgment on this ground in any event.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. # 162) is granted as it relates to plaintiff's remanufacture theory of strict liability and negligent design claim and denied as it relates to plaintiff's holding out theory of strict liability, negligent failure to warn

claim, non-manufacturer seller defense under Kan.Stat.Ann. § 60–3306, and useful safe life defense, Kan.Stat.Ann. § 60–3303.