**Bernardo ZAVALA–PIZANO, Plaintiff,**

v.

**INDUSTRIAL HANDLING EQUIPMENT CO. et al., Defendants.**

No. 91–3061.

United States District Court,
C.D. Illinois,
Springfield Division.

March 29, 1994.

Joseph W. Phebus, Urbana, IL, for plaintiff.

Richard C. Hayden, Mattoon, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD MILLS, District Judge:

This cause is before the Court on the motion by the third party Defendant Airport Specialities for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.

### I. Background

An action for products liability and negligence.

This case revolves around an April 17, 1990 injury Plaintiff suffered while using a conveyor. The Plaintiff's right glove was allegedly caught on the conveyor belt and dragged into the center drive of the conveyor. As a result, the lower part of Plaintiff's right arm had to be amputated.

The conveyor was purchased by Plaintiff's employer from Defendant Industrial Handling. Industrial Handling had reconfigured the conveyor assembly after purchasing it as used equipment from Defendant Airport Specialties.

Defendant Industrial Handling brought a third party complaint against Airport Specialties for contribution. Airport Specialties now moves for judgment as a matter of law on that third party complaint.

### II. Analysis

■ Industrial Handling purchased the conveyor assembly as used equipment from Airport Specialties. As the Court stated in our previous order dated 11 January 1994, a seller of used equipment may not be held liable under a theory of strict liability, because the seller is "outside of the original producing and marketing chain." *Cruz v. Midland–Ross Corp.,* 813 F.Supp. 628, 631 (N.D.Ill.1993); *Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 19–20, 329 N.E.2d 785 (Ill.1975).

■ However, a seller of used goods may be liable under a theory of negligence. Though Airport Specialties had no duty to inspect the conveyor assembly for defects, Airport Specialties did have a duty to warn of a dangerous condition which it knows or if it had unequal knowledge and reason to believe that Industrial Handling would not perceive of the danger. *Kirkman v. Kirkman,* 195 Ill.App.3d 393, 397, 141 Ill.Dec. 914, 552 N.E.2d 282 (Ill.Ct.App.1990). There is no duty to warn against risks which are known and obvious. *Id.* (quoting *Baylie v. Swift & Co.,* 27 Ill.App.3d 1031, 1042, 327 N.E.2d 438, 447 (Ill.Ct.App.1975)). A defect is latent when it is hidden. *Kutzler v. AMF Harley–Davidson,* 194 Ill.App.3d 273, 141 Ill.Dec. 190, 550 N.E.2d 1236 (Ill.Ct.App.1990).

■ The Court finds that the defect in the conveyor systems was known and obvious. At trial in this case, Plaintiff's expert Professor Ruhl testified that the conveyor equipment was defective because: (1) the conveyors did not have full side guards; (2) the conveyors did not have a full barrier guard surrounding the center drives. However, Mr. Mitrovic, president of Industrial Handling, acknowledged that he knew that there were no such guards, and that he consciously and knowingly resold the conveyor equipment, after modifying it, to the plaintiff's employer without the side guards or full barrier guards because he did not believe the guards were necessary. Moreover, at trial, it was adduced that the lack of guards was in no way concealed from Industrial Handling.

■ The Court also finds that Airport Specialties also did not have superior knowledge of the defective conveyor assembly. Thirty to forty percent of Industrial Handling's total sales involved conveyors. Industrial Handling checked the equipment it purchased to make sure the equipment was functioning properly. It also maintained a manufacturer's book for each major company and made sure the used equipment met current safety guidelines before it was resold. Industrial would make modifications to the used equipment and resell the equipment as they did in this case. Overall, Industrial Handling was a professional conveyor dealer and seller—with at least as much knowledge of any potential conveyor defects as Airport Specialties.

Alternatively, the Court agrees with Judge Grady's well reasoned opinion in *Cruz v. Midland–Ross Corp.*, 813 F.Supp. 628, 631 (N.D.Ill.1993) that policy and cost/benefit considerations should preclude *any* duty on dealers of used equipment. Judge Grady noted that dealers in used equipment lack the ability to encourage the production of safer goods. *Id.* at 632. Likewise, the sale of used products does not generate the kind of expectations of safety associated with new products and the imposition of a duty on the sellers of used products would sacrifice the used products market in order to gain marginal gains in safety. Thus, Judge Grady concluded that unless the seller " 'has assumed a more intrusive or affirmative role by either warranting the condition of the product, or inspecting, reconditioning, or rebuilding the product,' " the seller should not be liable under a negligence or products liability theory. *Id.* at 632 (quoting 1 M. Stuart Madden, *Products Liability* § 3.26 (2d ed. 1988)).

In this case, there was no evidence presented that Airport Specialties took any affirmative role in warranting, inspecting, reconditioning, or rebuilding the product. Accordingly, the Court agrees that Airport Specialties did not owe a duty of care to Industrial Handling. *See also* Restatement (Second) of Torts, § 402 Comment d; *Stillie v. AM Intern. Inc.*, 841 F.Supp. 370, 374 (D.Kan.1993) (similar result applying Kansas law); *Tillman v. Vance Equipment Co.*, 286 Or. 747, 596 P.2d 1299 (1979) (similar result applying Oregon law); *Sukljian v. Charles Ross & Son Co.*, 69 N.Y.2d 89, 511 N.Y.S.2d 821, 503 N.E.2d 1358 (1986) (similar result applying New York law).

*Ergo,* Airport Specialties' motion for judgment as a matter of law is ALLOWED. Airport Specialties is dismissed from this case WITH PREJUDICE and WITHOUT COSTS.